Morss *v.* Sherrill.

———————————◆———————————

## MORSS *vs.* SHERRILL and WRIGHT.

It is the clear province of the jury to deal with facts; especially in cases of conflict of testimony; and the province of the jury only.

To justify an appellate tribunal in setting aside a verdict on the ground that it is against the weight of evidence, it must be *entirely* against the weight of evidence.

A new trial will not be granted where the testimony is contradictory, and the character and credit of the witnesses questioned, on the ground that the verdict is against the weight of evidence.

The verdict of a jury, in cases of conflict of testimony, can only be set aside when the case itself presents the evidence that the jury must have been influenced by passion, prejudice or mistake.

When there is no decided preponderance of evidence on either side, the case depending mainly upon the·conflicting testimony of the parties themselves, who are equally respectable and unimpeached, the jury are the proper persons to decide between them, as to whose testimony is entitled to the greatest credit.

Although there may be cases in which the ends of justice demand that the court should possess the power to correct *abuses* committed. by a panel of jurors, that power should be limited by reasonable rules: It must be an abuse; it must be such a verdict as evinces that it was the result of passion, prejudice, mistake or corruption; such a verdict as shocks the common judgment; or such as is without evidence to support it, or is so against a striking preponderance of evidence that a common exercise of judgment demands its reversal.

THIS action was brought· to recover of the defendants, jointly, the sum of $600 and interest from October 18, 1867, being the. balance due upon a promissory note given by the defendants.

The answer of the defendants admitted the execution and delivery of the note in question to the plaintiff. It also alleged that the defendant Wright signed the note as the surety of the defendant Sherrill, and that on or about the 10th day of November, 1868, the defendant Sherrill was the holder and owner of a certain bond and mortgage, given by one Doolan to the father of the defendant Sherrill, dated April 1, 1867, upon which there was due the sum of $600 and some interest. It was also alleged by the defendant Sherrill that in November, 1868, he assigned said bond and mortgage to the plaintiff, with the understanding, agreement and direction that the said mortgage should be applied to the payment and satisfaction of the said note, as far as the same would satisfy and pay it, and that he (Sherrill) would pay any balance. This was denied by the plaintiff, and this was really the only question legally controverted on the trial, though other collateral, and some immaterial, issues were presented on the trial, which it is not necessary to notice.

The action was tried at the Greene circuit, in February, 1870, when the jury found the main issue in the case in favor of the defendant, and rendered a verdict in favor of the plaintiff for $20.70, which was the balance due on the note sued upon, over and above the amount of the bond and mortgage so assigned as aforesaid. This verdict established that the jury believed the mortgage was assigned in payment of the note, as alleged in the answer. The testimony, however, was directly in conflict upon this issue. The defendant Sherrill, in positive terms, swore to the agreement as set forth in his answer. The plaintiff, in as positive terms, stated, in effect, that the mortgage was assigned to meet the defendant's portion of losses in a copartnership relation between them. Both parties were examined at great length, upon this and other issues made on the trial.

After the rendering of the verdict, the plaintiff's coun-

sel made a motion for a new trial, upon the judge's minutes, which motion the judge granted, and made an order to that effect. From that order the defendant appealed to this court.

*Givens & Osborn,* for the appellant.

*Olney & King,* for the plaintiffs.

*By the Court,* P. POTTER, J. We learn the reasons of the learned judge, in granting the order for a new trial, from the language used by him, which is as follows: " I am satisfied that the verdict in this case is wrong, and entirely against the weight of evidence." " I am also impressed with the conviction that the jury were misled by issues outside of the testimony, and which should not have been considered." If the jury were misled in this case, it was not for want of a clear presentation of the case, and of the duties of jurors, by the charge of the court. No charge could be made, more clearly to present the issues in the case, and the manner of weighing evidence by a jury, in a case of conflict, than the one given in this case by the learned judge. Nor can there be a doubt that the jury clearly understood the charge; and clearly understood the two opposite theories of the case; for their verdict was exactly that which the learned judge directed them to find, in case they adopted the defendant's theory, and his evidence as being the most reliable; as the following extracts from the charge will show: " Assuming that the parties are equally entitled to credit—that each is respectable and unimpeached—then the case is balanced, and the plaintiff entitled to recover. So, also, if you believe the plaintiff's story is corroborated by Smith—that the evidence as to the receipt is true—the plaintiff then is entitled to recover. If, however, you believe the defendant; that the plaintiff's and his witness

Smith's testimony is not to be believed, and that their evidence is untrue, the defendant is entitled to a verdict. You must be satisfied, however, of this before you find a verdict for the defendant." "You have nothing to do, gentlemen, with the litigations which Mr. Morss has had heretofore, or with his character, outside of this testimony. You have nothing to do with anything independent of the evidence in this case. You must discard from your minds any lodgment it may have made, to prejudice you against the one side or the other. You must be governed by the evidence, and by nothing else. If you are satisfied that the defense has succeeded—that they have established a clear and satifactory case of payment—then you will render a verdict in favor of the defendants. If, on the other hand, they have failed to establish their defense, your verdict should be for the plaintiff, for the amount of the note. If the defendant is entitled to your verdict— if he has established his defense—then the verdict for the plaintiff will be about twenty dollars and seventy-one cents. If the plaintiff has established his claims—if the defense is not established—then the plaintiff is entitled to recover in the amount of six hundred and ninety-eight dollars and sixty-nine cents."

The verdict for the plaintiff for $20.71, which the jury were instructed to find, in case they believed the defendant had established the defense he had sworn to, shows most clearly whose evidence they believed to be true. As I understand the rule, it is the clear province of the jury to deal with facts; especially, in cases of conflict of testimony; and the province of the jury, only. The rule on this subject, I think, was clearly laid down in the case of *Honsee* v. *Hammond*, by the general term in the third district, in a case where there was conflicting evidence, by Justice MILLER, who said : "The verdict must be *entirely* against the weight of evidence, to justify an appellate tribunal in setting it aside. The jury, whose province it

was to weigh and pass upon the evidence, have decided that the preponderance was against the defendant. A new trial will not be granted where the testimony is contradictory, and the character and credit of the witnesses questioned, on the ground that the verdict is against the weight of evidence." " The jury have decided the questions of *fact,* * * and there is no rule of law which allows us to interfere with, or to set aside, their verdict." To sustain this opinion, the learned judge cited the case of *Culver* v. *Avery,* (7 *Wend.* 384,) in which Justice SUTHERLAND remarked, " A verdict must be *most clearly and manifestly* against evidence, to justify a court in setting it aside." " Whatever may be the opinion of the court upon the strict weight of evidence, * * the jury, whose province it was to weigh and pass upon it, who saw and heard the witnesses, have thought the preponderance against the defendant. I should have been inclined to a different conclusion ; *but the jury not only had the right,* but were more competent, fairly and discreetly to decide the question, than we are. Their decision cannot be disturbed." The cases are almost innumerable, which may be cited to the same effect, much stronger than the present. A well considered case is found, decided at general term, in the eighth district, before Grover, Daniels and Marvin, JJ., in which Grover, J., said, (29 *How.* 170 :) " My impression is strong that the verdict was not in accordance with the real truth of the case. Yet, I am not prepared to say that the case is so flagrant as to show passion, prejudice or inattention to duty on the part of the jury. There is positive evidence of one witness, in support of the verdict, and it would be going further than any reported case ·authorizes, to set aside the verdict." And in the case of *Murphy* v. *Boker,* (3 *Rob.* 4, 5,) the same rule is recognized—that the verdict of a jury, in cases of conflict of testimony, can only be set aside when the case itself presents the evidence that the jury must

have been influenced by passion, prejudice or mistake. I have, myself, in numerous instances within my own recollection—some of which cases are reported—held to the same rule.

But the case before us, itself, does not even show a preponderance of evidence at all worthy of remark. The plaintiff and defendant were directly in conflict, it is true; and as to them, the learned judge intimated to the jury that they were each respectable and unimpeached. Presenting the case, then, as to numbers, respectability and character of witnesses, the parties were equal. Both stories could not be true; one might be. Who so proper to decide between the veracity of witnesses, in such a case, as the jury? They (the jury) are men of the vicinage, knowing the character of both; witnessing their manner of testifying, judging of the reasons, motives and interest which influenced the parties, and the probabilities of the truth of their respective statements, their opinions are better than ours; better than that of the learned judge who tried the case.

With all respect, the jury were far more competent than the court, to determine this. It would, in my opinion, violate the theory of our system of jurisprudence, and render the boasted right of trial by jury a useless formality, and an excrescence upon the system, for courts to set aside verdicts upon the ground of differing with a jury as to the correctness of a finding of facts, which is conceded to be the province of a jury. In fact, such a rule would deprive the jury of their so-called province. And the court would possess the province not only of directing them as to the law, but as to the facts, also. This is not my understanding of the true theory of our system. I think the exercise of such a power, if it was possessed by the judge, would have the effect to impair public confidence in the courts, and subject the judge to the imputa-

Morss *v.* Sherrill.

tion of invading the domain of the jury box, or of usurping the duties of the jury.

I would not claim that the court is without power to correct *abuses* committed by a panel of jurors. There may be cases in which the ends of justice demand this; but this power is limited by reasonable rules. It must be an *abuse;* it must be such a verdict as evinces that it was the result of passion, prejudice, mistake or corruption; such a verdict as shocks the common judgment; or such as is without evidence to support it; or is so against a striking preponderance of evidence that a common exercise of judgment demands its reversal. The case before us possesses no such features. I think we cannot even say that the fair weight of evidence is against the result. The learned judge very properly cautioned the jury against any influence or feeling against the plaintiff on account of his litigious character. This may have been necessary. It may be the jury knew this character; and possibly, notwithstanding the charge, the jury may have known, and unconsciously been influenced by his character; but we have no right so to conjecture. It is, I think, an equal chance that it was an honest, intelligent, and perhaps a righteous, verdict. It is not against the weight of evidence, unless it is assumed that the witness Smith corroborates the plaintiff. Of this the jury could best judge. In reading the testimony of Smith, it does not carry to my mind a conviction of its reliability. If the jury regarded this evidence as suspicious, and as improperly procured by the plaintiff to sustain and support his own, then it should not only be rejected, itself, but would have the effect to cast suspicion upon the evidence of the plaintiff.

The wisdom of the time-honored rule of the common law, which refers questions of fact to the jurors, and questions of law to the judge, is not more conspicuous in any class of civil cases than such as present the question of conflict of evidence. Cases of this nature frequently come

Morss *v.* Sherrill.

before the courts for review, in which it is found that men of equal intelligence and judgment differ in their knowledge of human character, in experience, in habits, in temperament and in mental organization. But from such a body of men can be obtained that average judgment which is the result of their deliberations, which, by our jury system, is a juster standard than the opinion of any one man, in the determination of a question of fact.

The learned judge adds, that he is impressed with the conviction that the jury were misled by outside issues. As there is no evidence in relation to this in the case, we have nothing, upon this question, on which we can review it. This furnishes no ground upon which an appellate court can act. This is not in the case for us to pass upon. It is not a legal ground, that can be reviewed, had the ground of those impressions been stated. If these impressions are right, this court cannot see them in the case ; if wrong, the party injured would be remediless. He could not correct the error.

I have not been able to find authority to sustain the order appealed from. I think it must be reversed, and the defendant permitted to perfect such judgment as the verdict entitles him to.

Order reversed.

[THIRD DEPARTMENT, GENERAL TERM, at Elmira, April 4, 1871. *P. Potter* and *Parker*, Justices.]