JAMES E. CHENEY, JR., AS ADMINISTRATOR, ETC., OF
THOMAS McAUSLIN, DECEASED, RESPONDENT, *v.* THE
NEW YORK CENTRAL AND HUDSON RIVER RAIL-
ROAD COMPANY, APPELLANT.

*Motion on the minutes for a new trial, on the ground that a verdict is against the*
*weight of evidence — it is in the discretion of the justice to entertain it — Liability*
*and duty of Railroad Company backing an engine at night across streets.*

Under section 999 of the Code of Civil Procedure it is left to the discretion of the
trial justice to decide whether or not he will entertain a motion, upon his min-
utes, to set aside a verdict as against the weight of evidence. Where such a
motion is entertained and denied it cannot be reviewed at General Term, unless
the case states that it contains all the evidence bearing upon the question.

Where, on a disputed question of fact, there is a conflict of testimony, the pre-
ponderance of evidence must be overwhelming to induce a court to disturb a
verdict.

The plaintiff's intestate, while crossing defendant's tracks, at their intersection
with a street in the city of Rochester, on a dark night, was struck by an engine
moving backwards, and killed. Upon the trial the justice charged that it was
for the jury to say whether it was the duty of the company, under the circum-
stances, to have a light upon the engine, and, as it was moving backwards,
upon the rear of it, and if so what kind of a light was required ; and then
said, "the company was bound to have so much light, and so located, that a
person reasonably diligent, and of natural powers of observation, might have
been able to discover it." *Held,* that the charge was correct.

The court also charged that it was the duty of the engineer "to keep a look-out
to see whether he is running down foot-passengers who are crossing the rail-
road track upon the highways of the city." *Held,* no error.

APPEAL from a judgment entered on a verdict rendered at the
Monroe Circuit, and also from an order denying a motion for a
new trial, made on the minutes of the judge.

The action was brought to recover damages for the alleged
negligence of the defendant's servant, whereby the plaintiff's
intestate received injuries of which he died. The intestate
was injured by being struck and run over by a locomotive
engine of defendants, while he was in the act of crossing the
defendants railroad tracks at their intersection with Sophia
street, in the city of Rochester. The court in its charge said :
" Now, what else was required of these employees of the company,
to ensure the safety of foot-passengers at that crossing ? It was

night.  It is for you to say whether it was necessary, in order to perform the duty of the company to foot-passengers, that there should be a light upon this engine ; and not only that, but whether, when the engine was backing, there should be a light upon the rear of it ; and it is for you to say what kind of a light was required.  The court cannot say to you what power of reflector and of lens was necessary, in order to constitute due diligence on the part of the railroad company.  The court can say, and must say, that it was only necessary that the company should have so much light, and so located, as would enable an ordinarily careful person undertaking to cross that track, in the use of his powers of observation, to see that the engine was coming.  How much light was required for that, it is for you to say.  The company was bound to have so much light, and so located, that a person reasonably diligent, and of natural powers of observation, might have been able to discover it.  Did the company have all that is required by that rule ?  It is, undoubtedly, the duty of the court to say that it was the duty of the engineer, chiefly charged with the operation of his engine, who has his hand upon the machinery of the engine, and controls its movement, to keep a look-out to see whether he is running down foot-passengers who are crossing the railroad track upon the highways of the city ; because, upon him and upon his look-out depends the operation of his engine—depends the stopping of his engine, if it be necessary in order to save life."

*E. Harris*, for the appellant.

*J. H. Martindale*, for the respondent.

Smith, J. :

The case as proved without dispute, or as the jury were warranted in finding upon conflicting testimony, was this : About nine o'clock on the night of February, 1877, the deceased and the witness Miles were about to cross the defendant's railroad, on the east sidewalk of Sophia street, on their way to their home north of the track.  There were six tracks across the street, and a long freight train was passing there on the third track from the south. McAuslin, the deceased, halted at or near the edge of the first

track and stood waiting for the train to pass. As soon as the trained crossed the sidewalk, he stepped forward at an ordinary pace, and was struck and fatally injured by an engine backing toward the east, on the second track. The night was cloudy and at the point where the injury occurred it was very dark. The outer tracks of the railroad were lined with embankments of snow about eight feet in height, which had been thrown up in clearing snow from the track.

The space between the embankment on the south side of the railroad and the track nearest it was about three feet. McAuslin was familiar with the crossing. He was of steady habits; was about twenty-four years of age, and not in good health. Miles also was crossing the railroad at the time of the collision. He was immediately behind McAuslin, and was so close to him that he was struck by the southwest corner of the engine, and was carried about four yards down the track. Another witness, Wagner, was immediately behind Miles. Wagner had stood at the outer edge of the south track waiting for the train to pass, and when it uncovered the sidewalk, he started on simultaneously with the others. He had no intimation that anything was wrong until he perceived that Miles was struck by something that moved out of his sight; he instantly brought up his hand and found that he was in front of an engine. The engine was moving at a slow rate of speed. It was stopped very soon after the deceased was struck. There was a conflict of testimony as to whether the bell of the engine was rung and whether there was a light on the engine. Three of the defendant's witnesses, who were employed on the engine, testified that the bell was rung, and three others, who were engaged on the track in the vicinity, testified that they heard the bell. Each of these six witnesses testified that the engine had lights burning, and that one of them was at the rear. Miles testified that when McAuslin stepped forward and he followed him, he (Miles) looked across and on either side to see if there was anything passing, and he did not see or hear anything, and that from the time he got to the railroad he was thinking about getting over it safely. Wagner testified: "As I went forward before the accident, I did not see anything to hinder me in going across; I probably did look, because I was on the look-out; I

don't remember all those little points; I know I did not hear anything; if I had I should have halted." The bell on the engine of the freight train was ringing, and the train made much noise in passing.

The counsel for the appellant argues that the verdict is against evidence, in finding, as the jury must have done, that no bell was rung or light carried on the colliding engine. The point is not tenable. The number of witnesses alone is not to control. The testimony of the defendant's witnesses is controverted by that of Miles and Wagner; the testimony of the latter witnesses is not negative merely. As they were intent upon ascertaining, if possible, whether there was anything to endanger them in attempting to cross the track, as they looked and listened for that purpose, and as they were in a position to see the light on the rear of the approaching engine, if there was one, and to hear its bell, if it was ringing, their testimony is affirmative evidence, tending to show that the bell was not rung, and that there was no light. Thus the facts in dispute depended upon the credibility of witnesses, or upon inference to be drawn from the circumstances proved, about which honest men might differ. It was, therefore, the duty of the trial court to submit the question of the defendant's negligence to the jury. (*Hackford* v. *N. Y. C. and H. R. R. R. Co.*, 53 N. Y., 654; *Salter* v. *Utica and Black R. R. Co.*, 59 id., 631.) And in this view of the case the defendant's counsel seems to have acquiesced at the trial, for although he moved for a nonsuit when the plaintiff rested, and also at the close of the testimony the motion was put solely upon the ground that the intestate was not shown to have been free from negligence. It was not suggested that there was no proof of defendant's negligence. The evidence being conflicting, and there being some evidence to sustain the verdict as to the negligence of the defendant, the verdict would be conclusive on that question, if the appeal were from the judgment alone. In the case of an appeal from a judgment entered on a verdict (unlike that of a judgment entered on the report of a referee or a decision of the court), the right of reviewing the facts is not conferred upon this court. (Code of Procedure, § 348; Code of Civil Procedure, § 1346; *Godfrey* v. *Moser*, 66 N. Y., 250.) But the appeal covers also the order denying the motion for a new trial made on the judge's minutes.

A question that has sometimes been suggested of not a little practical consequence here arises, whether in a case of conflicting testimony a judge can entertain a motion made upon his minutes to set aside a verdict, on the ground that it is against *the weight* of evidence. By the Code of Civil Procedure (section 999), the cases in which a judge may entertain a motion on his minutes, to set aside a verdict and grant a new trial, are thus specified " upon exceptions ; or because the verdict is for excessive or insufficient damages ; or otherwise contrary to the evidence or contrary to law." The question depends upon the sense in which the words " contrary to the evidence " are used. They are a substitue for the words " insufficient evidence " employed in the Code of Procedure. (Code of Procedure, § 264; Throop's note to section 999 of Code of Civil Procedure.) Doubtless they include the case of a verdict without any evidence to sustain it, and the case of a verdict without sufficient evidence. In those cases the judge will ordinarily need no other examination of the evidence than his minutes will enable him to make, in order to determine the questions raised, but the doubt suggested is, whether the statute intends that questions as to the preponderance of conflicting testimony shall be disposed of in that summary way, thus making the remedy given by motion for a new trial on the minutes a substitute in all cases for a motion on a case upon the merits. (2 Whit. Pr. [2d ed.], 724; 3 Wait's Pr., 423.) The correct view, probably, is that the statute leaves the matter to the discretion of the trial judge; but the power in question is to be cautiously exercised. (*Algeo* v. *Duncan*, 39 N. Y., 313.) But we are of the opinion that whenever a motion to set aside a verdict, on the ground that it is against the preponderance of evidence, has been heard and decided on the minutes of the judge, it is necessary that the case to be made for the purpose of review should state that it contains all the evidence bearing upon the question.

It does not appear, from the case before us, that it contains all the evidence relating to the question of the defendant's negligence. On that ground, if there were no other, we would be justified in affirming the order denying the motion to set aside the verdict as against the evidence.

But assuming that all the evidence is before us, we are of

the opinion that the verdict should not be set aside as against evidence. The case does not show any abuse committed by the jurors. In general, whenever, on a disputed question of fact, there is a conflict of testimony, the preponderance must be overwhelming to induce a court to disturb a verdict. (*Morss* v. *Sherrill*, 63 Barb., 21 ; *Board of Comm'rs of Excise* v. *Backus*, 29 How., 33 ; *Holman* v. *Dord*, 12 Barb., 336.) In reviewing the finding of a jury, and the evidence upon which it is based, there are certain cardinal rules which are not to be lost sight of. It is the right of the jury to decide as to the credibility of testimony ; to weigh the evidence and to draw inferences from it ; the court are not authorized to set aside a verdict simply because, if they had been on the jury, they would have found a different verdict ; and it is not enough that the verdict may possibly be wrong, but the court should be satisfied that after giving a proper weight to all the evidence it cannot be right. (Gr. & Wat. on New Trials.) Tested by these rules, and having regard to the nature of the evidence in this case already adverted to, we cannot say that the verdict is against the weight of evidence, especially as it has been affirmed by the learned judge who presided at the trial, and had the opportunity of seeing and hearing the witnesses.

Another point taken by the appellants' counsel is, that the motion for a nonsuit, the grounds for which have already been mentioned, was improperly denied, and also that the evidence was insufficient to warrant a finding that the deceased was free from negligence. In view of the testimony given on the part of the plaintiff, which has been already referred to, we think neither of these positions is well-founded.

Two exceptions were taken to the charge. It is insisted that the judge erred in charging that it was the duty of the railroad company to have so much light upon the tender of the engine as to enable an ordinary person to see it, in the exercise of reasonable diligence. The appellant's counsel concedes that the absence of a light was a material circumstance, to be considered by the jury in determining whether the engine was run with proper care. But if we understand his position, it is, that the charge subjected the defendant, while operating its trains, to the duty of warning persons crossing their track of

the approach of such trains, by specific signals, or means other than those prescribed by statute, and is therefore within the condemnation of the case of *Beisiegel* v. *N. Y. C. R. R. Co.* (40 N. Y., 9), the case of *Grippen* v. *Same* (id., 34), and others that might be cited. The part of the charge excepted to is to be read with its context. Just before that, the judge had told the jury that it was for them to say whether it was necessary, in order to perform the duty of the company to foot-passengers, that there should be a light upon the engine; and not only that, but whether, when the engine was backing, there should be a light upon the rear of it, and what kind of a light was required. As a whole, the charge on the subject of a light seems unexceptionable. The precaution pointed out by the judge was not one exclusively designed to give warning to travelers, like the posting of a flagman at a street-crossing, but it had respect to the moving of the trains and the use of the road. (*Weber* v. *N. Y. C. and H. R. R. R. Co.*, 58 N. Y., 451.) Besides, the evidence warranted the jury in finding that, owing to the darkness of the night, the engine could not be seen at the crossing unless it had a light upon it, and as it was the duty of the intestate to use his eyes, it would seem to follow that it was the correlative duty of the defendant to take reasonble precaution that the engine could be seen. (See *Maginnis* v. *N. Y. C. and H. R. R. R. Co.*, 52 N. Y., 215.)

An exception was taken to the charge, that it was the duty of the engineer operating the engine to keep a look-out for foot passengers while crossing the streets of the city. The appellant's counsel insists that there is no rule of law requiring an engineer to look out for foot passengers. We cannot subscribe to the doctrine that persons operating an engine upon a railroad track are under no obligations to take due care to avoid injuring others lawfully crossing such track. The degree of care required is governed by a regard for the time, place and all other circumstances affecting the liability of third parties to receive injuries while in the exercise of reasonable care and prudence on their part. (*Grippen* v. *N. Y. C. R. R. Co.*, 40 N. Y., 34; *Johnson* v. *Hudson R. R. R. Co.*, 20 id., 65; as limited in *Weber* v. *N. Y. C. and H. R. R. R. Co.*, 58 id., 451; *Fero* v. *Buf. and St. Louis R. R. Co.*, 22 id., 209 ; *Maginnis* v. *N. Y. C. and H. R. R. R. Co.*

[*supra*].) It cannot be doubted but that it was the duty of the defendant's servant, when backing his engine across the street, to use his eyes, as far as he could reasonably, to avoid injuring persons traveling in the highway. He was not required to neglect his duty in respect to the management of the engine, and the rule of reasonable care above stated would not require him to do that. If it be suggested that the charge was not so qualified, the lack of such qualification was not pointed out at the time by exception or request to charge.

The judgment and order appealed from should be affirmed.

MULLIN, P. J., and TALCOTT, J., concurred.

Judgment and order denying motion for new trial affirmed.