WESLEY B. HOLMES *et al.*, Appellants, *v.* HARVEY YOUNG, Respondent.

*Supreme Court, Fourth Department, General Term, July 20, 1889.*

1. *Slander of title. Malice.*—In an action of title to personal property, the malicious intent to injure plaintiff's ownership in the property, is a question of fact, and the referee's finding on this point, on conflicting evidence, will not be disturbed on appeal to the general term.
2. *Appeal.*—An exception to the referee's finding of fact, when sustained by the evidence, is unavailing.

Appeal from a judgment entered upon the report of a referee dismissing the complaint upon the merits, with costs.

Action to recover damages for alleged slander of plaintiff's title to what is known as the "Chyle Cheese Factory." It was built upon lands belonging to the defendant in the town of Springfield. On the 14th of December, 1883, the defendant executed to one Eseck E. Sanders, a lease of the premises on which the factory was built, "for and during the term of which while the party of the second part runs the same for a cheese factory. When he don't use same as a cheese factory, he has the right to move the building off said premises. * * * The party of the second part is to pay for the building, and the privileges of the lot the sum of $1,420.75, and give his note for the balance. The party of the second part has the right to sell the above mentioned privileges and building to any person, for the purposes of making cheese."

On the 23d of September, 1886, Sanders executed an assignment of the lease and agreement referred to one Davies, and to the Plaintiffs McDonald and Holmes, in consideration of $1,063. The referee found as a fact "that at the time plaintiffs and D. J. H. Davies purchased said factory and premises from Eseck E. Sanders, the defendant held a chattel mortgage on the cheese factory building and the apparatus therein, and a real estate mortgage on the interest of said Sanders in said factory premises. That there was then unpaid on said mortgages the sum of four hundred and twenty-nine dollars and seventy-five cents, with interest from the 10th day of September, 1886."

He also found that the purchasers "had actual notice of the defendant's claims and mortgages," and that the chattel mortgage was properly filed in the proper clerk's office on the 11th day of June, 1886.

Plaintiffs, in their complaint, allege "that the defendant did during the time aforesaid falsely and maliciously state, represent and assert to and in the presence and hearing of divers persons, of and concerning the said cheese factory and premises, and of and concerning the said lease land

appurtenances, and the plaintiff's said estate and interest therein as follows : ' That said cheese factory and premises were not worth $400 ; that said plaintiffs had no right to take water from a certain spring of defendant's for the use of said factory ; that said plaintiffs had no right to drain the slops from said cheese factory across the lands of the defendant ; that said plaintiffs had no way to drain said cheese factory ; that said plaintiffs had no way of obtaining water for use in said cheese factory ; that he (defendant) would dig a ditch near said spring of water upon his (defendant's) farm and cut off the supply of water from said cheese factory ; that these plaintiffs could not give good title to said cheese factory and premises ; that the neighbors and patrons would not patronize said cheese factory : that he (defendant) would build a cheese factory near the cheese factory and premises aforesaid of these plaintiffs, and ruin the factory of these plaintiffs aforesaid ; that he (defendant) held claims against said cheese factory and premises for more than the value of said cheese factory and premises, and that he would enforce payment of his claim at once."

That by reason of such utterances, " one Milan Mathews, who was negotiating with these plaintiffs for the purchase of said cheese factory and premises and who would otherwise have purchased the same, was then and there hindered and prevented from purchasing the same, and from thence hitherto has wholly declined to purchase the same. And thereby the same plaintiffs have lost and been deprived of all the emoluments and advantages which they might and would have derived and acquired from the sale thereof, to the great damage to these plaintiffs, to wit ; of the sum of $500."

The referee found, among other things, viz. : " That plaintiffs have not proven that the defendant ever uttered or made any statement of and concerning the factory and premises described in the complaint, maliciously or with an

intent to injure or damage the plaintiffs, or either of them."

Also : " That the plaintiffs have failed to prove that the defendant ever uttered or spoke of and concerning the cheese factory, privileges, premises and appurtenances mentioned in the complaint, any of the words and statements set forth and alleged in the complaint of the foundation of this action."

Also : " That the true value of the factory, premises and appurtenances, is not to exceed $400, and the value of said factory, premises, apparatus and appurtenances has not exceeded that sum at any time since the plaintiffs and D. H. J. Davies purchased the same on the 23d day of September, 1886."

As a matter of law, he found that the plaintiffs have not proved that defendant ever spoke or uttered any slanderous words concerning the lease, factory apparatus, privileges and premises set forth in the complaint, and any words proved to have been used by the defendant would not destroy or impair the plaintiff's title to said factory and premises. And he also ordered the complaint dismissed on the merits, with costs.

*H. D. Luce,* for appellants.

*A. C. Tennant,* for respondent.

HARDIN, P. J.—In Kendall *v.* Stone (5 N. Y. [1 Seld.] 14), it was held that " to maintain an action for slander of title of lands the words spoken must not only be false, but they must be uttered maliciously, and be followed as a natural and legal consequence, by a pecuniary damage to the plaintiff which must be specially alleged and proved."

In Hovey *v.* Rubber Tip Pencil Company (57 N. Y. 125), JOHNSON, J., in referring to an action for slander of title, observes : " Malice, or a wilful purpose of inflicting injury, is a necessary ingredient of the action." And in Like *v.* McKinstry (41 Barb. 186), it was held that an action lies

for slander of the plaintiff's title to personal property, and that to maintain such an action the plaintiff must establish (1) that the words were false; (2) that they caused an injury to him in reference to his title to the property; (3) that they were uttered maliciously, and in order to injure the plaintiff." And the doctrine of that case was re-affirmed and approved in Gibbons *v.* Luke (37 Hun, 577).

The appellants, to support their cause of action, rely upon the testimony of Charles Garline (fol. 19), and the testimony of Milan Matthews (fol. 34), and the testimony of Romain Osterhout (fol. 45), and also the evidence of Edwin McDonald (fol. 51, 69).

The witness Garline details an interview which he had with the defendant in respect to the defendant's claim upon the property when he (Garline,) became a purchaser thereof, and the witness says " defendant first told me that he did not want any one to have the factory that had another one, and he finally said that if he wanted any one to have it that had another one, he would as soon I would have it as any-one else, and had rather that I would." The witness says that in another interview he met the defendant and told him he was trying to buy the factory, and that he came over to talk with him about it. He thereupon testifies that the defendant says: " What are you going to buy? You cannot buy no location and you cannot buy the cows, and that there was another factory going up there, and then the one that was there was not worth a dollar; Mr. Holmes asked him who was going to put up a factory, and he said it was a good man, but did not mention any names."

In the course of the cross examination the same witness states that the defendant, in the first conversation, said " all the objection he had to my buying the factory was that he did not want me to pay $1,200; he thought that was too much." This same witness, when interrogated as to the value of the factory, states that he did not consider it worth much of anything."

The witness, Milan Matthews, called for the plaintiffs, testified that in the fall of 1886, he was negotiating with the plaintiffs about buying this factory, and that the plaintiffs asked him $1,200 for it, and he looked the property over and heard the lease read, and that he had a conversation with the defendant about the property while the negotiations were pending, and then he adds, viz.: " Mr. Young seemed anxious that I should come there on the start; when we first talked, he thought I could get the factory for $400 or $500 ; he told me if I came there he would stick by me; the first conversation I had with Mr. Young was before I had negotiated with plaintiffs at all." This witness also testifies : " I told Young plaintiffs asked $1,200 for factory; he (Young) thought that was too much; that it could be bought for less; this was all that I recollect at that time; I could not tell how long after this it was that I saw Young again ; I had a talk with Holmes, and then I saw Young again; he told me that Mr. Holmes was there that day, and said I had offered him $900, and I asked him if he (Holmes) would not take $1000, and Young said he thought if I had offered that, I would get it ; he told me it was not any money out of his pocket; we talked about the building and contents, and what it would cost to build new; I told Mr. Young it was the location I was after, not the building so much ; he told me I was not buying anything, was not sure of anything ; I had spoken about going to see McDonald and the other plaintiff, and Mr. Young advised me not to go ; I then told defendant I guessed I would not go to see McDonald and Holmes ; I did not go; I did not buy the factory." The witness also testified that the defendant told him " that if I bought the factory, he would not be particular about his claim on it, but if I did not, he wanted his money."

The witness, Osterhout, worked one summer in the factory, and was familiar with the property, and he testifies that the defendant " told me if I could buy the property

for $700, $800 or $900, I should buy it, and he said if I bought it for that I would get it cheap; after having a talk with Sanders, I saw Young and told him that Sanders wanted $1,200, and Mr. Young told me to offer him $800 or $900, and I offered him that; after having the talk with Sanders and Young, I saw plaintiffs come to Mr. Young's house; they came out, and I had a conversation with plaintiffs in relation to the purchase of the factory; plaintiffs drove away, and defendant came out of his house, and I had a conversation with defendant; defendant wanted to know what plaintiffs wanted, and I told him they wanted to sell me the factory, and he asked me what they wanted for it, and I told him $1,200; defendant said, "It is not worth it, because (he says) I am going to build a new factory; he says: It is not worth one G——d d——n dollar, and don't you buy it, I said, how are you going to manage in a dry time, when there is not water enough hardly to supply one factory; and he says, I can dig below that spring so that the damned suckers won't get any water across my lands; I did not buy the property."

The witness McDonald testified that he had a conversation with the defendant a day or two before he and Holmes bought out Davies, or a day or two afterwards, and that the defendant said "he did not know or did not care what we did with the factory; he wanted his money; he said, 'I have got a mortgage on the factory, and I am going to have my pay;' I said to him his mortgage was not due; when it was, if he had a mortgage, he would get his money." And after adding the other parts of the conversation, he says that in his interview with the defendant, the defendant stated "that the factory was not worth a dollar above his claim, or something like that, and that he was not safe, and he wanted his money."

By way of contradiction or avoidance of the testimony given by the plaintiff, which we have quoted, the defendant proved the securities which he held upon the property and

the amount due thereon, and the defendant testified, among other things, as follows: "I heard the testimony of Robert Osterhout; I guess the most of it; I never told him that if he bought the cheese factory for $700, $800 or $900, he would get it cheap, or that in substance; I never told him, in words or substance, that I could dig below the spring, so the damned suckers could not get any water , or that I was going to put up a new factory, or that the one there would not be worth a G——d d——n cent, or anything of this import; I heard Mr. Mathews sworn; I did not tell Mr. Mathews, in words or substance, that in buying this factory, he was not sure of anything ," and he also testified that in anything he said to Garline, Mr. Mathews, or any-one else, with respect to this cheese factory, he had no in-tention to injure the plaintiffs, or either of them.

Several witnesses were called, who testified the value of the factory was from $300 to $500.

After a careful consideration of the evidence which we have quoted in connection with all that is found in the ap-peal book, and after giving the findings of the referee such influence as they should receive upon questions of fact, we are of the opinion that the conclusion of the referee " that plaintiffs have not proved that the defendant ever uttered or made any statement of and concerning the factory and premises described in the complaint, maliciously or with an intent to injure or damage the plaintiffs, or either of them," should be sustained. We think that conclusion is not against the clear weight and preponderance of the evidence.

Whether the defendant, in the conversation which he held in respect to the property, was actuated by malice or a malicious intent to injure the ownership of the plaintiffs in the property, was a question of fact; and in passing upon that question the referee was called upon to consider the exact language used by the witnesses on either side as well as the surrounding circumstances; and following well-recog-nized precedents, we are of the opinion that we ought not

to interfere with the findings of the referee. Continental National Bank *v.* Crosby, 16 N. Y. State Rep. 226 ; Wright *v.* Saunders, 65 Barb. 214 ; S. C. affirmed 3 Keyes, 323. In the latter case it was said, viz. : " Four witnesses against one is a very great preponderance. Yet it was the right of the referee to believe the one and disbelieve the four. He saw and heard them, and he is much better able to determine the amount of credit to which they were respectively entitled, than we can be."

There being evidence to sustain the findings, the defendant's exception thereto was unavailing. Porter *v.* Smith, 7 Civ. Pro. Rep. 195.

The appellant calls our attention to Brown *v.* Penfield (24 How, 67). We think that case does not aid his contention. There the clear preponderance of the evidence was against the finding made by the referee, and HOGEBOOM, J., observed, viz. : " The referee not only decided against the weight of evidence, but erred in the application of the rules of law." And he, also, observed, viz. : " A wrong result upon undisputed evidence is an error of law."

We think the remarks of BOARDMAN, J. in Roosa *v.* Smith (17 Hun, 139), are quite pertinent to the case before us, he said : " We understand the court has the power to examine the evidence and the finding of facts in cases tried before a referee or the courts ; that it has the power, and it is its duty, to interfere when facts have been found without evidence or clearly against evidence ; but we do not understand it can be called on in doubtful cases upon conflicting evidence, depending upon the character and credibility of witnesses, to review and readjust the facts upon the evidence as it shall appear to it on paper. See, also, Laraway *v.* Fisher, 19 N. Y. State Rep, 650, decided in this department.

We think the referee has correctly disposed of the case, and that his report should be sustained.

Judgment affirmed, with costs.

MARTIN and MERWIN, JJ., concur.