## SCHUMAKER v. MATHER et al.

*(Supreme Court, General Term, Fourth Department. April, 1891.)*

1. APPEAL—REVIEW—WEIGHT OF EVIDENCE.

In an action to recover damages for fraudulent representations, wherein the verdict of the jury turned upon the credibility of a witness, plaintiff's husband, testifying as to such representations, the evidence was conflicting, and the jury found for the plaintiff. *Held*, that the credibility of such witness was peculiarly a matter for the determination of the jury, and a verdict rendered by them, based upon his testimony, should not be disturbed.

2. FALSE REPRESENTATIONS—EVIDENCE.

In an action to recover damages for fraudulent representations made by the defendants in the sale of lands, the defense was that the plaintiff did not rely upon the defendants' representations, but had full knowledge of the quality of the land, through her husband, who had examined the same. It appeared that plaintiff refused to take the land upon her husband's judgment at that time of the year, and that defendants thereupon assured her that it was one of the best and most pro-

ductive farms in the whole county. *Held*, that the evidence justified the jury in finding defendants' representations were relied on by plaintiff.

**3. SAME.**

In such case, upon the issue whether or not the husband, as agent, had had a fair opportunity to examine the land, evidence that the land was covered with snow upon the occasion of his first visit, and of his sickness upon the second, was sufficient, in default of any evidence of negligence on the part of said agent, to justify the submission of such issue to the jury.

**4. SAME—SUBMISSION TO JURY.**

In such case, where the tendency of such fraudulent representations was to throw plaintiff off her guard, and prevent an examination of the land by her or her agent, the falsity of the same having been established, it was proper to submit to the jury the question whether the plaintiff knew them to be false, and was not deceived by them in the purchase.

**5. SAME—EVIDENCE.**

Upon the trial of such action it was competent and material, as against the defendants, for the plaintiff to prove that such false representations, made to her husband and agent, were communicated to her by him, and that she relied upon the same in making the trade.

**6. APPEAL—REVIEW—RULINGS ON EVIDENCE—PRESERVATION.**

Objections to evidence not saved by exception at the trial, and disclosed by the appeal-book, will be disregarded when made in the appellate court.

Appeal from circuit court, Oneida county.

Action by Clara E. Schumaker against Joshua Mather and Charles W. Mather, defendants. Defendants appeal from a judgment entered in Oneida county, January 30, 1890, for $5,698.82, on the verdict of a jury, and from an order denying their motion for a new trial made on the minutes of the trial judge. The action was commenced in January, 1887, to recover damages for fraud or deceit in the exchange of a farm owned by the defendants situated in Oneida county, N. Y., for a farm situated in Otsego county, owned by the plaintiff. So far as is material to the questions involved on this appeal, the allegations of the complaint were that the defendants in October, 1884, were the owners of a farm which they desired to sell the plaintiff; that, with intent to defraud and deceive her, they knowingly, falsely, and fraudulently represented to her that it was one of the best stock farms in Oneida county, that the soil was very fine, and that it was a very productive farm, and that part of it could not be surpassed by any land in Oneida county, and the balance was not quite so good; that it produced 3,000 bushels of oats and 500 bushels of wheat and rye that season, and that said amounts were there in the barns, and that it then kept and would keep 100 head of cattle and 16 horses, and that said land was worth more than $65 per acre; that the plaintiff, relying upon and believing these representations, gave to the defendants, in exchange for said farm and 28 cows, a farm of 100 acres, worth $16,000, incumbered to the amount of $4,000, paid the defendants $3,000 in cash, and gave them a mortgage upon the farm purchased, for the sum of $6,500, which purchase price amounted to $20,670; that the representations made by the defendants were false and untrue, known by them to be so, and were made with intent to cheat and defraud the plaintiff; that the farm was sandy, unproductive, and not worth to exceed $25 per acre, including 28 cows; that the quantity of grain represented to be in the barns was not the product of said farm alone; that instead of 3,000 bushels of oats in the barn there were only 1.200 bushels, and instead of 500 bushels of wheat and rye there were only 200; that said farm would keep only 35 head of cattle and horses; and that the plaintiff sustained damages in the sum of $16,000. The defendants denied the allegations of fraud contained in the complaint. They alleged as a second defense and counter-claim that the plaintiff was guilty of fraud in falsely representing the quantity of land contained in the farm transferred by her to the defendants, and also falsely represented that a stream or pond of water on said farm never overflowed any portion of the farm, and further alleged that other false and fraudulent representations were made in regard to

such farm. On the trial the court submitted to the jury the questions whether the defendants represented to the plaintiff that the farm transferred by them to her did keep and maintain from its products 100 head of cattle and 16 horses, and, if so, whether such representations were false; known by the defendants to be false; were made with the intention of inducing the plaintiff to make the exchange of farms; and relied upon by her. These were the only questions submitted to the jury as to the fraud of the defendants in making such exchange. The court also submitted to the jury the question whether the plaintiff represented to the defendants that the stream or pond of water on the farm transferred by the plaintiff to the defendants overflowed only about one-half an acre of the land on said farm; whether such representation, if made, was false; known by the plaintiff to be false; was made with the intention of defrauding the defendants; and relied upon by the defendants in making such exchange.

Exceptions were taken to the charge. The portions of the charge bearing upon and including the particular statements excepted to were as follows: "The general term, which has once passed upon this case, has held, as to all of the allegations of the complaint here as to which proof has been made, except one, that they are not allegations upon which fraud can be based at all, and that one is the allegation—I do not give the precise language, but simply the idea—that the Rome farm did keep and maintain from its products 100 head of cattle and 16 horses; not that it would do that, because a statement that it would do it would be the expression of an opinion. But the plaintiff alleges that the elder of these two defendants stated the fact to be that it did do that; and that is the allegation, and the only allegation, that you are to consider in this case. The question as to whether any such representation as that was made or not is a matter of serious dispute here; and I may say, first, generally, that in regard to the various allegations,—most of which, as I have said, have been held to be the expression of an opinion, as to its being the best farm in Oneida county, as to its capacity to do this or that, and so on,— as to those things which are a matter of opinion, there is a serious controversy here as to whether those statements were ever made. The plaintiff gives evidence which you have heard here as to these various things. The defendants deny them absolutely,—every one of them; so that there is, in the first place, the question of fact to be determined as to whether this representation was made at all. That is the first question of fact for you to determine. It is not claimed, gentlemen, that precisely this language was used, and I charge you that it is not necessary, in order to maintain that this representation, in substance, was made, that the precise language of this representation should have been used. But they must establish on the part of the plaintiff, in order to maintain the action, that the idea expressed in this representation was conveyed and intended to be conveyed by the defendant Joshua Mather, because he is the person whom it is claimed made it. It will not do for them to say that he talked in such a way that the plaintiff's husband so understood it, because it is not a question in the first instance as to what the plaintiff's husband understood, but as to what the defendant Mather said; and as to him you have got to find that he made the statement, that it was false, and that he knew it to be false when he made it; for, as you will see, his intention is involved. In order to find that this representation is established, you must find that he intended to represent, in substance, that the Rome farm did keep and maintain the season through, from the products of the farm, 100 head of cattle and 16 horses; and that is what the plaintiff alleges upon the evidence that has been given here, fairly considered and fairly construed, he did intend to say, and that that meaning he did convey to the plaintiff's husband. * * * Upon all the evidence in the case, gentlemen,—the evidence given by these parties, the consideration of the men themselves, and the weight and the credit to be given their evidence,—you are to pass upon this question,

whether the elder Mather made the representation which I am submitting to you,—a representation the idea of which, without giving the precise language, is that that Rome farm did actually maintain and keep through the year from its products 100 head of cattle and 16 horses. If you find that that representation was not intentionally made by Joshua Mather, it is the end of the plaintiff's claim in this case, and she cannot maintain the action on her part at all. If, on the other hand, you find he did intentionally make the representation in words or substance,—intentionally convey that idea to the plaintiff's husband,—then you will have found this one element of the cause of action in favor of the plaintiff, and then you will pass on to consider the others. As I said before, you are not to take this case, the whole of it, together. You are not to inquire as to the whole of these representations which have been testified to here,—whether any of them were true or untrue,—but you are to determine as to this one alone. So far as the whole of the transactions may aid you in determining this question you may consider them, but you may not attempt to find that there was a false representation as to anything else in the case except this. If you find that this representation was not made, that ends the case. If you find it was made, then you pass on to consider the other questions. * * * There is another branch of this case, gentlemen, —a question which was made a ground for the motion for nonsuit by the counsel for the defendants. The real effect that the plaintiff claims was given to this representation was not solely and alone that the cattle and the horses were kept there, but they say, and they claim, that the effect of that upon the mind of the plaintiff was to show the quality of the soil,—the productive qualities of the farm,—and therefore they say that they were deceived by this statement as to the productive qualities and the real value of the farm. There is also another principle of law applicable to that subject, where the question of what the farm was is involved. In *Long* v. *Warren*, 68 N. Y. 432, it is said that 'where the exercise of common prudence and caution on the part of this defendant would have enabled him to avoid being imposed upon by the parties, then there can be no recovery. When the real quality of the thing spoken of is an object obvious to ordinary intelligence, and the parties making and receiving the representations have equal knowledge or equal means of acquiring information, and the truth or falsity of them may be ascertained by the party interested in knowing, by the exercise of ordinary inquiry and diligence, and nothing is done for the purpose of throwing him off his guard, and directing him away from making the inquiry, and the examination which every intelligent person ought to make, then there was no "false or fraudulent" statement, within the legal definition of that term, upon which an action can be maintained. The representations must be such as relate to a matter as to which the complaining party did not have at hand the means of knowledge. When the means of knowledge are at hand, and equally available to both parties, and the subject of the purchase is equally open to their inspection, if the purchaser does not avail himself of those means and opportunities he will not be heard to say that he was drawn into the contract by the vendor's misrepresentation.' Now, it is claimed by the defendants that the effect to be given to this law in this case is that this man had every opportunity to look at this farm himself, and see what the quality of it was. They say that he said that he had been 44 years a farmer, and he knew about such things, and they say that he had abundant opportunity to find out all about this farm, and that he did it; and they say, therefore, that it comes within this provision of the law, and that he shall not now be heard to allege that he was drawn into this trade by the misrepresentation of the other side. Then, connected with this same subject, is this language, which I find in the opinion of the general term in this case quoted from 65 Barb. 556, (*Vandewalker* v. *Osmer*:) 'While it is true that a purchaser may, by relying upon the representations of the vendor, be misled, and omit to make the care-

ful examination of the property that a prudent man would and should make, yet a jury should require the clearest proof that the purchaser was induced by the representations to omit to examine the property. It will not do to permit a vendee having the property before him, and defects in it plainly discoverable, to shut his eyes and ears, and omit to use his senses, and pretend that he relied upon the representations, and was thereby misled.' I leave to you, gentlemen, the question of fact in this case, in view of this law, as to whether the plaintiff's husband—because he represented her—was in such a position, under this provision of the law, that he, having a full opportunity to examine, will not be heard to allege that he was drawn into this trade by the misrepresentation. And this leads you to examine and determine the question as to, after all the examination that he did make of the farm, what opportunities he had. As to the last time that he was up there, on the 24th and 25th, it is not claimed that anything was said to him, or done with reference to him, to prevent his making so much examination as he saw fit of the place. That is, that nothing was said to draw him away from the examination of it by anybody connected with the defendants. On the first occasion it is claimed that Lovelace took him there, and that after a very hurried examination of the buildings he induced him to go away without making a further examination, and hear Ben Butler speak. That is controverted, as I have suggested before; it being claimed on the part of the defendants, upon the evidence of Lovelace and others, that upon that occasion, instead of simply going through the buildings, they went over the farm to the extent that you will recollect. I will not attempt to indicate to what extent, but you will recollect the evidence. Now, what is the truth about that? Did he arrive at the farm that day in the morning, having left Utica at five o'clock, and go through the buildings, and then go about the place; or did they, on the other hand, leave Utica about dinner-time, go up there, and go to the farm, pass through the buildings, and then, without taking any look at the land, go down and hear Ben Butler? Which way was it? Then, on the last occasion, when he got up there, what examination did he make of the place? He does not claim but that he had the right and the opportunity and the privilege of staying there, and looking at it to any reasonable extent. But he says it was not in condition to look at, because it was covered with snow. Witnesses on both sides give evidence upon the subject as to whether there was really any snow which would interfere with a full examination of the place. You will, of course, recollect their testimony, and not take my statement of it. Some of them say, as I remember, that there was no snow at all; others that there was some snow; and yet we find most of them saying that the snow had left the ground substantially by 10 or 11 o'clock. Schumaker gives as a reason why he did not stay there and examine the farm after the snow went off, that he was not feeling well. Upon these suggestions that I have made to you, gentlemen, about the law, and applying them to the evidence, and investigating the case carefully, you will say whether or not, even if this representation was false, and was made with the intent to deceive, this representation was relied upon, and was the representation and the thing which induced and brought about this purchase. If you find that it was not, the plaintiff's cause of action fails. If you find that it was, having found these two elements of the cause of action in favor of the plaintiff, then you will come to the question of damages." The jury found in favor of the plaintiff, and awarded her damages in the sum of $5,525.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*John W. Boyle,* for appellants. *Scripture & Backus,* for respondent.

MARTIN, J. The appellants contend that the evidence in this case was insufficient to justify the court in submitting to the jury the question of the defendants' fraud, or to uphold the verdict in this case. The question of the

defendants' fraud, as submitted to the jury, was made dependent upon whether they fraudulently represented to the plaintiff that the Oneida county farm had kept during the season 100 head of cattle and 16 horses. Thus, at the outset, we are led to examine the evidence to discover whether it was sufficient to justify the jury in finding that this representation was made by the defendants, or either of them. On the trial the plaintiff's husband was called as a witness, and testified that the defendant Joshua Mather "asked him if Lovelace had shown him the stock and crops; that he said 'he had, and that he [Lovelace] says that the crops you estimate to be three thousand bushels of oats, and five or six hundred bushels of rye;' to which Mather replied: 'More than that; we had a large crop,—a fine crop; it is one of the most and best productive farms in Oneida county.' He said he could keep one hundred head of cattle there and sixteen horses, and the farm would support them." The witness, who was the agent of his wife, also testified that he believed the representation that Mather made to him "that he kept from the products of that farm, then upon it, one hundred head of cattle and sixteen horses." The defendants denied that they made these representations. The question whether the defendants represented that the farm kept 100 head of cattle and 16 horses was submitted to the jury in a charge which was eminently fair to the defendants, and the jury found that the representation was made by them. If the plaintiff's husband was to be believed, the evidence was sufficient to justify that finding. If the language testified to by him was used by the defendant Joshua Mather, it was obviously his purpose and intent to convey to the mind of the plaintiff's husband the idea that the farm did keep and maintain, the season through, from the products thereof, that number of cattle and horses. The question of the credibility of this witness was for the jury. By its verdict it has found him worthy of belief. It is true the evidence was conflicting, but, still, the question was for the jury. "It is the clear province of the jury to deal with facts, especially in cases of conflict of testimony, and the province of the jury only. To justify an appellate tribunal in setting aside a verdict on the ground that it is against the weight of evidence, it must be entirely against the weight of evidence. A new trial will not be granted where the testimony is contradictory, and the character and credit of the witnesses questioned, on the ground that the verdict is against the weight of evidence. The verdict of a jury, in cases of conflict of testimony, can only be set aside when the case itself presents the evidence that the jury must have been influenced by passion, prejudice, or mistake." *Morss* v. *Sherrill*, 63 Barb. 21; *Hayes* v. *Thompson*, 2 Hun, 518; *Chaffee* v. *Morss*, Id. 602; *Roosa* v. *Smith*, 17 Hun, 139; *Betsinger* v. *Chapman*, 24 Hun, 15, 17; *Baird* v. *Mayor, etc.*, 96 N. Y. 567; *Holmes* v. *Young*, 6 N. Y. Supp. 924.

That this was a question of fact for the jury was held by this court on a former appeal in this case. 8 N. Y. Supp. 940. We think the finding was sustained by the evidence, and should not be disturbed. Therefore, in the further consideration of this case, it must be assumed that this representation was made. The jury also found that it was false, and known by the defendants to have been false when made, and was made with an intent to cheat and defraud the plaintiff. Assuming, as we must, that the representations were made, the findings that it was false, known to be so, and made with an intent to defraud the plaintiff, are fully sustained by the evidence. It is, however, contended by the appellants that the plaintiff did not rely upon such representations, and hence was not entitled to recover in this action. The appellants' claim is that the plaintiff's husband and agent had a full opportunity to and did examine this farm, and thus become possessed of a full knowledge of its quality and condition, and of its capacity to keep stock; that it was upon his knowledge, obtained by this examination, that the plaintiff relied in making the exchange, and not upon the representation

of the defendants.    The extent of the examination made, and the opportunity the plaintiff's husband had to determine the quality and character of this farm, and its capacity to keep stock, was the subject of dispute on the trial. If the evidence of the plaintiff's husband was relied upon, and there was some evidence corroborating it, the jury was justified in finding that he did not have a fair or sufficient opportunity to examine the farm, and that the plaintiff relied upon the representations of the defendants in making the trade.    The court submitted to the jury the question whether the plaintiff's husband and agent had such an opportunity to examine this farm that neither he nor his wife could be heard to claim that they were drawn into this trade by the defendants' misrepresentation.    The court, in effect, charged that if the exercise of common prudence and caution on the part of the plaintiff's husband would have enabled him to avoid being imposed upon by the defendants, then there could be no recovery in the case.    Under this charge, which was certainly as favorable to the defendants as they were entitled to, the jury found with the plaintiff.

The plaintiff also proved that she refused to make the trade upon any examination that had been made, and informed the defendants that, if there was a trade to be effected, she traded wholly upon their representations; that she would not take her husband's judgment, nor the judgment of any other man, upon the farm, from an examination made at that time of the year; and that it was upon those conditions that the trade was to be made, if they traded; that the defendant replied "that she could not make a mistake on that farm; it was one of the best and most productive farms in the country;" to which her husband replied: "I know nothing about this farm, only what you say.    I made no inquiries of no man, only you.    Mrs. Schumaker asked me whether you were responsible parties.    I told her I considered you were." In reply to which the defendant said: "We are good for what we say or agree to do."    The plaintiff also testified that she relied upon their representation as to the number of head of cattle and horses he kept, and about the quantity of grain they raised, and about its being the best farm in Oneida county, and that she would not have made the exchange if she had not relied upon them.    This evidence not only tended to show that the plaintiff relied upon the defendants' representations, and not upon the examination made by her husband, but also that the defendants intended that she should rely upon them.    We think the evidence was sufficient to justify the jury in finding that the representations made were relied upon by the plaintiff.

The appellants also claim that the court erred in submitting to the jury the question "whether the plaintiff's husband, because he represented her, was in such a position, under this provision of the law, that he, having a full opportunity to examine, will not be heard to allege that he was drawn into this trade by misrepresentation."    To properly understand this portion of the charge, and its purpose and effect, the whole of that portion of the charge which related to this subject should be considered; as an appellate court will not seize hold of isolated portions of a charge for the purpose of discovering error.    If the charge, as a whole, conveys to the jury the correct rule of law upon a given question, the judgment will not be reversed.    If the language used is capable of different constructions, that one will be adopted which will lead to an affirmance of the judgment, unless it fairly appears the jury was, or at least might have been, misled.    *Caldwell* v. *Steam-Boat Co.*, 47 N. Y. 282; *Losee* v. *Buchanan*, 51 N. Y. 492.    Upon this question the appellants in their brief state: "On the undisputed testimony of all the witnesses, including Schumaker, he had a full opportunity to examine the Rome farm, and to obtain just as much knowledge about it, its soil, productiveness, and what it had, did, or would keep, as the plaintiff had or knew.    On the evidence, there was no issue raised as to this.    The court should have so held upon the trial, instead of submitting this question to a jury to speculate upon.    The

evidence was all one way on this subject, and under the cases cited (*Long* v. *Warren*, 68 N. Y. 426, 432; *Vandewalker* v. *Osmer*, 65 Barb. 556) this question should have been so decided by the court." One error in this claim is the assertion that the undisputed evidence disclosed that the plaintiff's husband had a full opportunity to examine the farm, and obtain the same knowledge of it as the defendants possessed. Such is not the case. If the testimony of the plaintiff's husband was believed, he did not have a fair opportunity to examine the farm, owing to the short time he was upon it, the season of the year when made, the snow upon the ground, and his sickness on the second occasion, by reason of which he was unable to remain upon the farm a sufficient length of time to make a complete examination of it. Under the evidence, the question whether he had such an opportunity to examine it as would prevent the plaintiff from claiming that she was induced to make the trade by the defendant's misrepresentation was a question of fact, and properly submitted to the jury. The representation made by the defendants, which was relied upon as the ground of recovery in this action, related to the amount of produce raised; and, while it had a direct bearing on the quality of the farm, it could not well have been accurately verified by an examination of the land. Moreover, the proof discloses that the plaintiff expressly refused to make the exchange upon the examination of her husband, or upon any examination that could be made at that time of the year, and informed the defendants that she would trade only in reliance upon their representations. The cases cited do not justify us in holding that the court erred in not holding as a matter of law that the plaintiff could not recover because of the opportunity her husband had to examine this farm. In *Institution* v. *Burdick*, 87 N. Y. 49, it was said: "The authority of that case [*Long* v. *Warren, supra*] should not be extended to cases not clearly within the principles there laid down. It is certainly not just that one who has perpetrated a fraud should be permitted to say to the party defrauded, when he demands relief, that he ought not to have believed or trusted him. Where one sues another for negligence, his own negligence, contributing to the injury, will constitute a defense to the action; but where one sues another for a positive, willful wrong or fraud, negligence by which the party injured exposed himself to the wrong or fraud will not bar relief. If the rule were otherwise, the unwary and confiding, who need the protection of the law the most, would be left a prey to the fraudulent and artful practices of evil-doers." When we examine the whole of the charge upon this subject, we find in it no error that would justify us in disturbing the judgment.

Again, it is contended that the court erred in submitting to the jury the question "whether the elder Mather made a representation, the idea of which, without giving the precise language, was that the Rome farm did actually maintain and keep through the year, from its products, one hundred head of cattle and sixteen horses." The grounds of the alleged error in this portion of the charge, as stated in the appellants' brief, are: "(1) Because if this is a false representation, and made with intent to defraud, it is not actionable, because as a knowledge of the truth or falsity of the statement could have been easily ascertained by the plaintiff's agent, this action cannot be maintained; (2) the language used in the charge is not the language of the witness Schumaker, nor the plaintiff, and is therefore suggestive to the jury that they might speculate on the interpretation to be given to the language used by Joshua Mather; and (3) because the expressions, charged to have been made use of by the elder Mather on this subject, are clearly open to a perfectly innocent and honest interpretation."

As to the first ground, we have already held that the evidence was not such as would have justified the court in holding, as a matter of law, that the plaintiff's failure to acquire a knowledge of the falsity of such representation was a bar to her recovery.

Nor do we think that the second ground of objection can be sustained. The evidence of the plaintiff tended to show that this representation was made, and was sufficient to justify the jury in so finding. If we assume that the representations proved were made, then we are clearly of the opinion that the evidence was sufficient to justify the jury in finding that they were not innocently made, but were made with the design to defraud the plaintiff. The representations proved related to the character and quality of the farm Their manifest tendency was to throw the plaintiff off her guard, and lead her to forego an examination, which she might otherwise have made, or to consummate the trade without further examination, when, but for them, she would not have done so. Under the evidence in this case, it cannot be held as a matter of law that the falsity of these representations was apparent or known to the plaintiff, and hence it became a question for the jury to determine whether the representations were made; were false; known by the defendants to be false; were made with an intent to deceive the plaintiff; were relied upon by her, and she deceived thereby. *Mayer* v. *Dean*, 115 N. Y. 556, 22 N. E. Rep. 261. When this portion of the charge is read with the context, it becomes quite manifest that this exception was not well taken.

On the trial the plaintiff was permitted to prove that her husband and agent informed her as to the representations made by the defendants, and stated to her what they were. This evidence was objected to as not competent against the defendants, and immaterial. The objection was overruled, and the defendants excepted. The defendants, however, insisted that, if the plaintiff was permitted to testify to any of the statements made by the defendants to Schumaker that were reported to her, they must prove all the reports that were made. The court so held. The witness was then permitted to testify that her husband told her of the representations which she proved that the defendants made, and to give the representations that were communicated to her, which were substantially like those testified to by her husband. The plaintiff was entitled to prove that the representations made by the defendants to her husband and agent were communicated to her, and that she relied upon them in making this trade. It was a part of the transaction, and clearly admissible. We do not think the appellants' exception to this evidence well taken.

On the cross-examination of the plaintiff's husband, the defendants proved by him that he wrote three letters, which were highly commendatory of the Rome farm, and which were inconsistent with the testimony given by him as to the quality of that farm. This witness also testified that his wife did not know of his writing the first two letters, but that she knew about his writing the third letter when he wrote it. While the plaintiff was on the stand as a witness, she was asked the following question: "Did you authorize your husband to write and send those letters?" This was objected to as leading and incompetent, the objection was overruled, and the defendants excepted. That question was not answered. The plaintiff was then asked: "Did you know about their being sent before they were sent,—the first two?" This question was not objected to. The witness answered: "No, sir." She then testified: "I think I knew something about the third, and told him it must be the last." She also testified that she did not know of it before it was sent; that she did not know of either of them before they were sent. It is claimed by the appellants that it was error to admit this evidence. An examination of the appeal-book fails to disclose any exception to the evidence given. As there was no exception to the evidence admitted, no question of error is presented for our determination.

The appellants also contend that the judgment should be reversed, and a new trial ordered, on the grounds that the verdict was unsustained by and against the weight of evidence. We do not think this contention can be sus-

tained. The evidence, although conflicting, presented a question of fact for the jury. We think its verdict should not be disturbed on that ground.

No question being raised by the appellants as to the disposition made of the issue as to the plaintiff's fraud set up in the defendants' answer, it is unnecessary to examine any of the questions bearing upon it. The appellants' claim that the damages were excessive cannot be upheld. The evidence was sufficient to justify the jury in finding that the plaintiff had sustained damages to the amount awarded. Having examined all the questions raised by the appellants in their brief, and having found no error which would justify a reversal, it follows that the judgment should be affirmed, with costs. Judgment and order affirmed, with costs. All concur.